# EXHIBIT 1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "**Agreement**") is made and entered into as of the *14th* day of *May*, 2012 (the "**Effective Date**") by and between PROFESSIONAL SYSTEMS, LLC, a Georgia limited liability company ("**Professional**"), PROFESSIONAL CLEANING CONTROLS, LLC, a Georgia limited liability company ("**PCC**"), MARK W. HORN ("**MWH**"), JAMES L. FRITZE ("**JLF**"), JIMMIE E. HORN, JR. ("**JEH**") and REGIONS BANK ("**Regions**"). Professional, PCC, MWH, JLF and JEH are collectively, the "**Obligors**." Obligors and Regions are collectively, the "**Parties**."

## RECITALS

WHEREAS, on December 12, 2008 and March 9, 2010, Professional and PCC executed certain Account Packages and Signature Cards (collectively, the "Account Packages") with regard to their Demand Deposit Account Nos. ******7227 ("Account 7227"), ******7189 ("Account 7189"), ******7332 ("Account 7332"), ******8800 ("Account 8800"), and ******8797 ("Account 8797"; together with Accounts 7227, 7189, 7332, and 8800, the "Accounts") held by Regions;

WHEREAS, pursuant to the Account Packages, Professional and PCC agreed "to be bound by [Regions'] Deposit Agreement and pricing schedule as now in force and as amended from time to time in the future.";

WHEREAS, pursuant to Regions' Deposit Agreement (the "Deposit Agreement"), "at [Regions'] election, [Regions] may pay any item drawn against [any A]ccount even though the item causes an overdraft to the account.";

WHEREAS, pursuant to the Deposit Agreement, in the case of an overdraft, "[Professional and PCC] agree[d] to pay the overdraft and the applicable fee[s].";

WHEREAS, as a result of Regions' payment of items drawn against the Accounts (the "Overdrafts"), which resulted in overdrafts to the Accounts and the imposition of insufficient fund and/or overdraft fees, as of May 9, 2012, the Accounts were overdrawn as follows:

| ACCOUNT NO. | OVERDRAFT AMOUNT |
|---|---|
| 7227 | $926,879.58 |
| 7189 | $34,071.40 |
| 7332 | $59,565.40 |
| 8800 | $2,230.55 |
| 8797 | $240.00 |
| Total: | $1,022,986.93 |

WHEREAS, Professional and PCC have breached the terms of the Deposit Agreement by failing to pay the Overdrafts and the resulting fees to Regions;

- 1 -

WHEREAS, there exists no breach, default or event of default by Regions under the Deposit Agreement, or any event or condition which, with notice or passage of time or both, would constitute a breach, default or event of default by Regions under the Deposit Agreement;

WHEREAS, by letter dated April 25, 2012, Regions notified Professional of its failure to pay the Overdrafts and the resulting fees, and demanded full payment of the amounts due and owing to Regions (the "Demand Letter");

WHEREAS, despite receipt of the Demand Letter, Professional has failed and/or refused to pay all amounts due and owing to Regions;

WHEREAS, the Account Packages and Deposit Agreement continue to be legal, valid and binding agreements and obligations of Professional and PCC;

WHEREAS, Professional and PCC have no offset or defense to its performance or obligations under the Account Packages and Deposit Agreement;

WHEREAS, as of May 9, 2012, Professional and PCC collectively owe Regions $1,022,986.93, with interest accruing after May 9, 2012 at seven percent (7%) per annum, plus fees of $37.00 per overdrawn item;

WHEREAS, MWH, JLF, and JEH are members and/or managers of Professional and PCC and agree to execute guaranties of payment of all amounts due and owing to Regions by Professional and PCC; and

WHEREAS, the Parties agree that the obligations incurred by Obligors were incurred in the ordinary course of Obligors' and Regions' business, and that Obligors' payment of the Settlement Payment is made in the ordinary course of Obligors' and Regions' business according to ordinary business terms, and that Regions has contemporaneously provided new value to Obligors by agreeing to the release described herein and delaying the filing of the Complaint against Obligors.

NOW, THEREFORE, the Parties have agreed to settle their disputes in accordance with this Agreement.

## AGREEMENT

1.      **Recitals.** The foregoing recitals are confirmed by the parties as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Agreement.

2.      **The Settlement Payment.**

a.      Regions agrees to provide the release described herein upon payment to Regions of the principal amount of $1,022,986.93, together with interest at the rate of 2% on the unpaid principal amount outstanding from the Effective Date until fully paid (the "**Settlement**

**Payment"**).  The Settlement Payment shall be paid by Obligors to Regions in equal monthly installments as follows:

      i.  Before the close of business (5:00 p.m. EST) on June 1, 2012, and continuing on the 1st day of each month thereafter until the Settlement Payment has been paid in full, Obligors agree to pay Regions the sum of $57,726.70.  If not sooner paid or due, Obligors will pay the principal amount of the Settlement Payment, together with any unpaid interest, in full on or before November 1, 2013.

      ii.  The Settlement Payment shall be sent to Regions pursuant to the following wire instructions:

        **RECEIVER BANK: REGIONS BANK**
        **RECEIVER ABA: 062 005 690**
        **BENEFICIARY ACCOUNT: 454200 110245**
        **BENEFICIARY: LOANS IN PROCESS – WIRES**
        **Notify:  Gail Curtis 404-253-5282**
        **Reference Account:  Professional Systems, LLC**
        **Account Location: Bank 60-Atlanta, GA**

      iii.  In the Event of Default, after notice and an opportunity to cure as provided herein, the entire Settlement Payment shall become immediately due and payable in full.

      b.     The Parties agree that payment of the Settlement Payment and Obligors' release of Regions as provided herein constitute a contemporaneous exchange and Regions has provided new value to Obligors by providing said release and delaying the filing of the Complaint against Obligors.  The Parties further agree that payment of the Settlement Payment is made in the ordinary course of Obligors' and Regions' business and made according to ordinary business terms to pay an obligation incurred by Obligors in the ordinary course of Obligors' and Regions' business.

      3.    **Guaranties.**  MWH, JLF, and JEH hereby unconditionally, irrevocably and absolutely guarantee the full and punctual payment of the Settlement Payment, and contemporaneously herewith, shall execute the guaranties attached hereto as **Exhibit "3"**.

      4.    **Release.**

      a.     Obligors hereby release, acquit, and forever discharge Regions, and its past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, predecessors, and successors (the **"Regions Released Parties"**) from any and all causes of action, claims, suits, damages, judgments, liens, and demands whatsoever in law and/or equity, contract or tort that Obligors, whether collectively or individually, had, now have, or may later have or claim to have against the Regions Released Parties, whether known or unknown, asserted or unasserted, against any of the Regions Released Parties now accrued or

that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose, or transpired at any time from the beginning of time to the Effective Date of this Agreement. Obligors covenant not to sue the Regions Released Parties for any matters released by Obligors in this Agreement. Nothing herein is intended or shall be construed as releasing Regions from any obligations arising under this Agreement or any document entered into pursuant to this Agreement.

b.      Subject to and contingent upon Obligors' timely payment of the entirety of the Settlement Payment, Regions releases, acquits, and forever discharges Obligors from any and all actions, causes of action, claims, suits, damages, judgments, liens, and demands whatsoever in law and/or equity that Regions had, now has, or may later have or claim to have against, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Effective Date of this Agreement, whether known or unknown, arising under the Account Packages and Deposit Agreement. Regions covenants not to sue Obligors for any matters released by Regions in this Agreement. Nothing herein is intended or shall be construed as releasing the Obligors from any obligations arising under this Agreement, the Consent Judgment, or any other document entered into pursuant to this Agreement.

5.      **The Consent Order and Consent Judgment.**

a.      On the Effective Date, Obligors and Regions shall execute:

i.   A consent order in the form attached hereto as **Exhibit "1"** (the "**Consent Order**"); and

ii.  A consent judgment in the form attached hereto as **Exhibit "2"** (the "**Consent Judgment**").

b.      Regions shall file a complaint against Obligors with regard to the Overdrafts in the United States District Court for the Middle District of Georgia, Macon Division (the "Complaint") after execution of this Agreement. Obligors agree to accept and acknowledge service of the Complaint.

c.      Obligors consent to entry of the Consent Order by the Court and hereby agree not interfere with, delay, prevent, void or appeal entry of the Consent Order. Obligors shall take such actions and execute such documents as may be required to obtain entry of the Consent Order.

d.      In the event that Regions timely receives the Settlement Payment as required in Section 2 of this Agreement, within three (3) days of Regions' receipt of the timely and full payment of the Settlement Payment, Regions will dismiss the action with prejudice.

6.      **Default.**

a.      Each of the following  shall constitute an "**Event of Default**":

i.   Any of the Obligors files a petition for bankruptcy under any chapter of the Federal Bankruptcy Code or takes advantage of any other debtor relief law, or an involuntary petition for bankruptcy under any chapter of the Federal Bankruptcy Code is filed against any of the Obligors, or any other judicial action is taken with respect to any of the Obligors by any creditor;

ii.  The commencement of a foreclosure action against any of the Obligors by any creditor;

iii. Regions discovers that any representation or warranty made herein by any of the Obligors was or is untrue, incorrect or misleading in any material respect;

iv.  Failure of Obligors to timely pay the Settlement Payment to Regions as set forth in Section 2 of this Agreement;

v.   The Court does not enter the Consent Order within thirty (30) days of the Effective Date; or

vi.  Any of the Obligors breaches or defaults in performance of any covenant or agreement contained in this Agreement including, without limitation, breach of such parties' covenant not to delay, prevent, void or appeal entry of the Consent Order.

b.      Upon the occurrence of an Event of Default, but only after notice by Regions to the Obligors and a failure by Obligors to cure such noticed default within ten (10) days after receipt of such notice, Regions shall have the immediate right to present the Consent Judgment to the United States District Court for the Middle District of Georgia, Macon Division for entry and, thereafter, Regions may take any steps to enforce the Consent Judgment, including levying upon Obligors' assets. Each of the Obligors hereby agrees that the filing by any Obligor of a petition in bankruptcy or the commencement of a bankruptcy proceeding against any Obligor shall not prevent the entry of the Consent Judgment against the non-bankrupt Obligors.

c.      Notwithstanding the fact that the Consent Judgment may be in a higher amount than what is currently due and owing to it, Obligors agree that Regions may present the Consent Judgment for the full amount as set forth in the form attached as Exhibit 2; provided, however, that Regions agrees that its collection of amounts owed by Obligors under the Consent Judgment will be limited to amounts owed under the Consent Judgment less the payments received by Regions from Obligors pursuant to this Agreement, if any.

d.      The Obligors hereby agree to cooperate with Regions and not interfere in any manner with the entry of the Consent Judgment after an Event of Default and failure to cure as provided herein.

7.      **Representations and Warranties.**  The Parties hereby make the following representations and warranties, and acknowledge that these and all other representations and

- 5 -

warranties contained herein are material to this Agreement and shall survive the signing of this Agreement and receipt of benefits hereunder:

      a.     The Parties are fully competent to and have the power, authority, and legal right to execute this Agreement and to bind themselves to the promises, covenants, terms, and conditions set forth herein and to perform their respective obligations hereunder.

      b.     Obligors represent and warrant that this Agreement is not being made or entered into with the actual intent to hinder, delay or defraud any entity or person.

      c.     The Parties acknowledge and agree that Regions' release of Obligors as provided herein is reasonably equivalent value for Obligors' payment of the Settlement Payment and is part of a contemporaneous exchange of value between Obligors and Regions.

      d.     The Parties represent and warrant that no rights, demands, claims, damages, losses, costs, expenses, actions, or causes of action whatsoever that they had, now have, or may later claim to have or have had, on account of, arising out of, or in any way relating to the Parties' relationship or their disputes have been assigned, conveyed, or transferred to any individual or entity.

      e.     No representation regarding the nature and extent of legal liability of the Parties has induced this Agreement.

      f.     The Parties acknowledge that each Party has received consideration in exchange for the releases provided herein.

      g.     Obligors represent and warrant that the financial statements delivered by Obligors to Regions fairly present, in all material respects, each Obligors' financial condition as of the date of such financial statements and Obligors acknowledge and agree that Regions has relied upon such financial statements in executing and delivering this Agreement.

      h.     Obligors represent and warrant that the execution, delivery and performance of this Agreement does not and will not violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award now in effect having applicability to any Obligor or result in a breach or constitute or cause a default under any agreement or instrument to which any Obligor is a party.

      i.     Obligors represent and warrant that this Agreement constitutes a valid and legally binding obligation and is enforceable against each and every Obligor in any and all material respects in accordance with its terms.

      **8.**     **Provision of Information.**

      a.     Obligors agree to promptly notify Regions in writing of the following collection activities taken on or after the Effective Date by other creditors of any Obligor: the filing of any liens, the filing of a complaint against any Obligor, the entry of any judgment

against any Obligor, the attachment of any Obligor's assets, or the issuance of any garnishments against any Obligor or its assets.

        b.    Upon the Effective Date, Obligors shall furnish to counsel for Regions the following:

        i.  All of Professional's and PCC's income and expense statements for the period covering the one (1) month period preceding the Effective Date.

        ii.  All bank statements (with copies of canceled checks and deposits) for any account held in the name of Professional and/or PCC or for the benefit of Professional and/or PCC for the period covering the six (6) months preceding the Effective Date other than those bank statements and related canceled checks for accounts with Regions.

        iii.  Professional's and PCC's projected monthly budget for May 2012 through December 2013.

        c.    Beginning on June 20, 2012, and continuing on the 30th day of each month (or the last day of February through December, 2013), Professional and PCC shall furnish to Regions their monthly financial statements for the preceding month, including their income and expense statement, balance sheet and a comparison of actual results to their projected monthly budget.

        d.    Upon the Effective Date, MWH, JLF, and JEH shall provide Regions with copies of their individual tax returns for 2011 and shall provide Regions with copies of their subsequently filed tax returns, along with an updated personal financial statement, annually on or before October 15th.

        e.    All submissions required under this Section 8 by Obligors shall be addressed to Regions at the Regions notice address listed in Section 13.

        9.    **Attorneys' Fees and Expenses.**  The Parties shall bear their own attorneys' fees and expenses in connection with this Agreement. If any Party files an action for a breach of this Agreement, the prevailing party will be entitled to recover all reasonable attorneys' fees and expenses incurred in prosecuting or defending that action.

        10.    **Governing Law.**  This Agreement, including its interpretation and enforcement, will be governed by the law of the State of Georgia, without regard to any state's choice of law rules.

        11.    **Jurisdiction.**  If any Party files an action for breach of this Agreement, the other Parties agree to submit to the jurisdiction of the United States District Court for the Middle District of Georgia, Macon Division.

        12.    **Strict Compliance.**  The failure of any Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants, or conditions set forth herein

shall not be construed as a continuing waiver or relinquishment thereof. Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants, and conditions of this Agreement.

13.     **Notices.**  All notices and other communications required or permitted under this Agreement shall be in writing and shall be sent by registered or certified mail (postage prepaid), return receipt requested or FedEx to the following:

Regions:                Stephen B. Geer, Jr.
                        Regions Financial Corporation
                        1180 West Peachtree Street, Suite 900
                        Atlanta, Georgia 30309

With a copy to:         Frank W. DeBorde, Esq.
                        Morris, Manning & Martin, LLP
                        1600 Atlanta Financial Center
                        3343 Peachtree Road, NE
                        Atlanta, Georgia 30326

Obligors:               Professional Systems, LLC
                        Professional Cleaning Controls, LLC
                        Mark W. Horn
                        Jimmie E. Horn, Jr.
                        James L. Fritze
                        6055 Lakeside Commons Drive, Suite 440
                        Macon, Georgia 31210

With a copy to:         D. Mark Baxter, Esq.
                        Stone & Baxter, LLP
                        Suite 800, Fickling & Co. Building
                        577 Mulberry Street
                        Macon, Georgia  31201

Notice shall be deemed effective when received.

14.     **Drafting.**  This Agreement was negotiated and drafted with full participation of the Parties and their respective counsel.  In the event that it is determined that any ambiguity exists in this Agreement, any such ambiguity shall not be resolved or otherwise construed against any particular Party, but rather shall be resolved by a fair reading of the intent of the Parties as established herein.

15.     **Successors and Assigns.**   The Parties agree that the terms, covenants, and obligations set forth herein shall inure to the benefit of and be binding upon each of their respective agents, attorneys, employees, representatives, administrators, executors, successors, and assigns.

16.     **Headings.**  The headings herein have been used to designate the various sections of this Agreement and are solely for convenience and ease of reference and shall not be construed in any event or manner as interpretative of this Agreement.

17.     **Modification.**  This Agreement shall not be amended, altered, revised, modified, terminated, or changed, except by further written agreement by the Parties.

18.     **Severance.**  If any provision of this Agreement is found to be contrary to law or void, the remainder of the Agreement shall be considered valid and enforceable and shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

19.     **Confidentiality.**

a.      No Party shall disclose to any third party, other than the Parties', legal, tax or accounting advisors, the terms of this Agreement, except as may be required by taxing authorities, or in any legal or administrative proceeding, pursuant to court order after reasonable and practicable prior notice to the other Parties.

b.      Nothing herein shall prevent any Party from seeking to enforce the terms of this Agreement in a court of competent jurisdiction or from disclosing this Agreement or its terms to any court for enforcement of the Agreement, entry and/or enforcement of the Consent Judgment.

20.     **Multiple Counterparts.**  This Agreement may be signed in multiple counterparts, each of which will be deemed an original and all of which taken together will constitute one instrument binding upon the Parties, notwithstanding that each Party is not a signatory to the same counterpart. Any scanned PDF counterparts or facsimile counterparts shall be considered originals.

21.     **Entire Agreement.**  The Parties agree that this Agreement sets forth the entire agreement of the Parties in relation to its subject matter and that no prior oral or written matters extrinsic to this Agreement shall have any force or effect.

[SIGNATURES BEGIN ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties hereto have set their hands and seals as of the Effective Date set forth above.

MARK W. HORN

Sworn to and subscribed before me
this 14 day of May, 2012.

_Cynthia D. Johnson_
Notary Public
My Commission Expires: March 2, 2014

JAMES L. FRITZE

Sworn to and subscribed before me
this 14 day of May, 2012.

_Cynthia D. Johnson_
Notary Public
My Commission Expires: March 2, 2014

JIMMIE E. HORN, JR.

Sworn to and subscribed before me
this 14 day of May, 2012.

_Cynthia D. Johnson_
Notary Public
My Commission Expires: March 2, 2014

PROFESSIONAL SYSTEMS, LLC

By: _____

Name: Mark W Horn

Its: Manager

Sworn to and subscribed before me
this 14 day of May, 2012

_Marna J. Berryhill_
Notary Public
My Commission Expires: 8·6·13

MARNA J BERRYHILL
Notary Public
STATE OF GEORGIA
My Comm. Exp. 8/6/13

PROFESSIONAL CLEANING
CONTROLS, LLC

By: _____

Name: James L. Fritze

Its: manager

Sworn to and subscribed before me
this 14 day of May, 2012.

_Cynthia D. Johnson_
Notary Public
My Commission Expires: March 2, 2014

- 10 -

Sworn to and subscribed before me
this 14 day of May , 2012.

_M. Hill_____
Notary Public
My Commission Expires: 08/15/2015

**REGIONS BANK**

By: _____

Name: _Stephen Geer_____

Its: _Senior Vice President_____



**EXHIBIT 1**
**[FORM OF CONSENT ORDER]**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| REGIONS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO._____ |
| PROFESSIONAL SYSTEMS, LLC, | ) | |
| PROFESSIONAL CLEANING | ) | |
| CONTROLS, LLC, | ) | |
| MARK W. HORN, | ) | |
| JAMES L. FRITZE, and | ) | |
| JIMMIE E. HORN, JR. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT ORDER**

The parties having executed a Settlement Agreement dated _____ ___, 2012 (the "Agreement"), and having consented hereto, and for good cause shown, it is hereby ORDERED AND ADJUDGED as follows:

.     1.     The terms and conditions of the Agreement are HEREBY APPROVED and are incorporated by reference as if set forth fully herein.

2.     The parties agree and the Court ADJUDGES AND ORDERS that Professional Systems, LLC ("Professional") and Professional Cleaning Controls, LLC ("PCC") are in default under a Deposit Agreement and certain Account Packages (as defined in the Complaint) executed in favor of Regions Bank ("Plaintiff"), and collectively owe Plaintiff $1,022,986.93, with interest accruing after May 9, 2012 at seven percent (7%) per annum, plus fees of $37.00 per overdrawn item.  Pursuant to the parties' Agreement, which contemplates a settlement of such amounts owing to Plaintiff in accordance with its terms, Mark W. Horn, James L. Fritze,

- 1 -

and Jimmie E. Horn, Jr. (together with Professional and PCC, the "Defendants") have guaranteed payment by Professional and PCC of all amounts due and owing to Plaintiff.

3.       Pursuant to the parties' Agreement, a true and correct copy of which is attached hereto as Exhibit A, if there is an Event of Default (as defined in the Agreement) by Defendants including, but not limited to, Defendants' failure to timely deliver the Settlement Payment (as defined in the Agreement) to Plaintiff, Plaintiff shall be entitled to present the Consent Judgment executed by Defendants to this Court for entry and subsequent execution against Defendants and, thereafter, Plaintiff may take any steps to enforce the Consent Judgment.

4.       The Agreement is hereby APPROVED and made an order of this Court.  This Court shall retain jurisdiction of this action to enforce the terms of the Agreement, including, but not limited to, entering and enforcing the Consent Judgment.

SO ORDERED this _____ day of _____, 2012.

_____
Judge _____
United States District Court for the Middle District
of Georgia

**CONSENTED TO BY:**

| **MORRIS, MANNING & MARTIN, LLP** | **STONE & BAXTER, LLP** |
|---|---|
| By:_____ | By:_____ |
| Frank W. DeBorde | D. Mark Baxter, Esq. |
| Georgia Bar No. 215415 | Georgia Bar No. 0043125 |
| Sameer K. Kapoor | Suite 800, Fickling & Co. Building |
| Georgia Bar No. 407525 | 577 Mulberry Street |
| 1600 Atlanta Financial Center | Macon, Georgia  31201 |
| 3343 Peachtree Road, NE | 478-750-9898 |
| Atlanta, Georgia  30326 | *Attorney for Defendants* |
| 404-233-7000 | |
| *Attorneys for Plaintiff* | |

**EXHIBIT A**
**[SETTLEMENT AGREEMENT]**

**EXHIBIT 2**
**[FORM OF CONSENT JUDGMENT]**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| REGIONS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO._____ |
| PROFESSIONAL SYSTEMS, LLC, | ) | |
| PROFESSIONAL CLEANING | ) | |
| CONTROLS, LLC, | ) | |
| MARK W. HORN, | ) | |
| JAMES L. FRITZE, and | ) | |
| JIMMIE E. HORN, JR. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FINAL CONSENT JUDGMENT

Upon consent and agreement of Plaintiff Regions Bank ("Plaintiff") and Defendants Professional Systems, LLC, Professional Cleaning Controls, LLC, Mark W. Horn, James L. Fritze, and Jimmie E. Horn, Jr. (collectively, "Defendants"), as indicated by their counsels' signatures and the signatures of the Defendants below:

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff have and recover, jointly and severally, from Defendants the amount of $1,022,986.93, with interest accruing after May 9, 2012 at seven percent (7%) per annum through the date of entry of this Judgment. In the event any payments have been made towards the amounts owed hereunder, any collection efforts or writs of execution issued hereunder will reflect a credit for the amounts paid.

IT IS HEREBY FURTHER ORDERED that interest shall accrue hereon at the applicable post-judgment rate.

IT IS HEREBY FURTHER ORDERED that the Clerk shall issue a Writ of Fieri Facias forthwith for execution

IT IS HEREBY FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 54(b), this judgment is a final judgment

SO ORDERED this _____ day of _____, 2012.

_____
Judge _____
United States District Court for the Middle District of Georgia

CONSENTED TO BY:
MORRIS, MANNING & MARTIN, LLP          STONE & BAXTER, LLP

                                       By:_____
By:_____    D. Mark Baxter, Esq.
Frank W. DeBorde                       Georgia Bar No. 043125
Georgia Bar No. 215415                 Suite 800, Fickling & Co. Building
Lisa Wolgast                           577 Mulberry Street
Georgia Bar No. 773399                 Macon, Georgia 31201
1600 Atlanta Financial Center          478-750-9898
3343 Peachtree Road, NE                *Attorney for Defendants*
Atlanta, Georgia 30326
404-233-7000
*Attorneys for Plaintiff*

                                       PROFESSIONAL SYSTEMS, LLC

                                       By:_____
                                       Name:_____

                                       Title:_____

                                       PROFESSIONAL CLEANING CONTROLS,
                                       LLC

                                       By:_____
                                       Name:_____

                                       Title:_____

2

MARK W. HORN

JAMES L. FRITZE

JIMMIE E. HORN, JR.

**EXHIBIT 3**
**[GUARANTIES OF**
**MARK W. HORN, JAMES L. FRITZE, AND JIMMIE E. HORN, JR.]**

# GUARANTY

THIS GUARANTY ("Guaranty") is given as of May 14, 2012, to REGIONS BANK (the "Bank") by JAMES L. FRITZE (the "Guarantor") for the obligations of PROFESSIONAL SYSTEMS, LLC, a Georgia limited liability company ("Professional") and PROFESSIONAL CLEANING CONTROLS, LLC, a Georgia limited liability company ("PCC"; together with Professional, the "Obligors")

## RECITALS

WHEREAS, on May 14, 2012, Bank, Obligors, and Guarantor entered into that certain Release and Settlement Agreement (the "Settlement Agreement"), pursuant to which, Obligors and Guarantor have agreed to pay the principal amount of $1,022,986 93, together with interest at the rate of 2% on the unpaid principal amount outstanding from the effective date of the Settlement Agreement until fully paid to Bank; and

WHEREAS, on May 14, 2012, Bank, Obligors, and Guarantor also entered into that certain Consent Judgment, which is attached as Exhibit 2 to the Settlement Agreement (the "Consent Judgment"), and upon the occurrence of an Event of Default under, and as defined in, the Settlement Agreement, Bank shall have the immediate right to present the Consent Judgment to the United States District Court for the Middle District of Georgia, Macon Division for entry; and

WHEREAS, Guarantor has a direct or indirect ownership interest in Obligors and will receive a direct or indirect benefit from the Settlement Agreement, and therefore has agreed to guarantee to the Bank the obligations of the Obligors as set forth herein; and

WHEREAS, but for this Guaranty, the Bank would be unwilling to enter into the Settlement Agreement

NOW, THEREFORE, in consideration of the Bank's financial accommodations to Obligors, the Guarantor hereby covenants and agrees with the Bank as follows:

1    Guaranty of Payment   The Guarantor hereby unconditionally and irrevocably guaranties to the Bank the full payment and performance, when due, by acceleration or otherwise, of all indebtedness, liabilities, and obligations of Obligors to the Bank of any kind and description under and pursuant to the Settlement Agreement or any document entered into pursuant thereto, including but not limited to, the Consent Judgment (collectively, the "Indebtedness")  The guaranty of the Guarantor as set forth in this section is an absolute, continuing, primary, and unconditional guaranty of payment and not of collection

If a claim is ever made upon the Bank for the repayment or recovery of any amount or amounts received by the Bank in payment of any of the Indebtedness and the Bank repays all or part of such amount by reason of (a) any judgment, decree, or order of any court or administrative body having jurisdiction over the Bank or any of its property, or (b) any settlement or compromise of any such claim effected by the Bank with any such claimant, including the Obligors, then in such event the Guarantor agrees that any such judgment, decree,

order, settlement, or compromise shall be binding upon the Guarantor, notwithstanding any revocation hereof or the cancellation of the Settlement Agreement or other instrument evidencing any of the Indebtedness, and the Guarantor shall be and remain obligated to the Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Bank, such amount to be included in the term "Indebtedness "

This Guaranty may be enforced by the Bank against the Guarantor without the necessity at any time of the Bank's (a) having recourse against Obligors on the Settlement Agreement, or (b) exercising any other rights available to it under the Settlement Agreement  The Guarantor on demand shall pay to the Bank in immediately available funds, in lawful money of the United States of America, any sum or sums due to the Bank hereunder

2      Nature of Obligations  The Guarantor acknowledges and agrees that no change in the nature or terms of the Indebtedness or the Settlement Agreement, whether by operation of law or otherwise, including, without limitation any impairment, modification, change, release, or limitation of the liability of Obligors by reason of any Obligors' bankruptcy or insolvency or any subsequent reorganization, merger, or consolidation of Obligors or any other change in their composition, nature, personnel, or location shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty  It is the purpose and intent of the Guarantor and the Bank that the covenants, agreements, and all liabilities and obligations of the Guarantor hereunder are absolute, unconditional, and irrevocable under any and all circumstances, including, without limitation, the invalidity or unenforceability of the Settlement Agreement  Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty are fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this paragraph of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, omission of the Bank, or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by the Bank, whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of, the Guarantor, including, without limitation, the failure of the Bank to perfect, or to continue the perfection of, any lien or security interest in any security or any delay by the Bank in perfecting any such lien or security interest, or by reason of any further dealings between the Obligors and the Bank, or any other guarantor or surety, and the Guarantor hereby expressly waives and surrenders any defense to its liability hereunder based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements, or waivers  Without limiting the generality of the foregoing, the Guarantor hereby gives its consent for the Bank to do any one or more of the following without in any manner affecting, impairing, limiting, modifying, or releasing any of the obligations of the Guarantor under this Agreement and without notice to or consent of the Guarantor: (a) exchange, compromise, or surrender the whole or any part of the security now or hereafter held for the Indebtedness; (b) exchange, extend, or renew the time or place of payment of the Indebtedness in whole or in part, to a time certain or otherwise whether or not longer than the original period, or withdraw credit or time to pay; (c) extend or change the terms of performance of any other obligations of Obligors under the Settlement Agreement; (d) modify, amend, or waive any of the provisions of the Settlement Agreement; (e) release or grant indulgences to Obligors; (f) receive property or other security as collateral for the Indebtedness; (g) fail to exercise due diligence or omit to enforce any right,

6865127 v01

-2-

power, or privilege under the Settlement Agreement; and (h) apply any payment received by the Bank from Obligors of, or on account of, the Indebtedness, in any manner the Bank elects

3    Waiver of Rights.  The Guarantor expressly waives: (a) notice of the execution and delivery of the Settlement Agreement and creation of the Indebtedness; (b) notice of acceptance of this Guaranty by the Bank and of all financial accommodations to Obligors by the Bank; (c) presentment and demand for payment of any of the Indebtedness; (d) protest and notice of dishonor or of default or nonpayment to the Guarantor or to any other party with respect to the Indebtedness or with respect to any security therefor; (e) notice of the Bank's obtaining, amending, substituting for, releasing, waiving, or modifying any security interest, liens, or encumbrances now or hereafter securing the Indebtedness, or the Bank's subordinating, compromising, discharging, or releasing such security interests, liens, or encumbrances and any other notices whatever; (f) demand for payment under this Guaranty; (g) the provisions of Section 10-7-24 of the Official Code of Georgia Annotated; and (h) all rights of subrogation, indemnification, contribution, and reimbursement from Obligors, all rights to enforce any remedy the Bank may have against Obligors, and any benefit of, or right to participate in, any collateral or security now or hereinafter held by the Bank in respect of the Indebtedness, even upon payment in full of the Indebtedness

4    Term of Guaranty: Warranties  This Guaranty shall continue in full force and effect until the Indebtedness is fully paid, performed, and discharged  The Guarantor warrants and represents to the Bank that (a) the Guarantor will directly benefit from the financial accommodations being extended to the Obligors by the Bank; (b) this Guaranty is binding upon and enforceable against the Guarantor, in accordance with its terms; (c) the execution and delivery of this Guaranty do not violate or constitute a breach of any agreement to which the Guarantor is a party or of any applicable laws; and (d) there is no litigation, claim, action, or proceeding pending, or, to the best knowledge of the Guarantor, threatened against the Guarantor that would materially adversely affect the financial condition of the Guarantor or its ability to fulfill its obligations hereunder

5    Attorneys' Fees and Costs of Collection  If at any time or times hereafter the Bank employs counsel to pursue collection, to intervene, to sue for enforcement of, or take any other action with respect to the terms hereof or of the Settlement Agreement, then in such event, all of the reasonable attorneys' fees and disbursements relating thereto and any other fees and disbursements incurred by or on behalf of the Bank, due to the failure of Obligors to pay the Indebtedness when due and payable, shall be an additional liability of the Guarantor to the Bank, payable on demand

6    Events of Default  The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") under this Guaranty: (a) the failure of the Guarantor to perform, observe, or comply with any of the provisions of this Guaranty, including, without limitation, the payment provisions; (b) the failure of Obligors to, after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement, make any payment due under the Settlement Agreement or any other default or event of default occurs under the Settlement Agreement after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement; (c) the filing of any petition for relief under any provision of

Title 11 of the United States Code (entitled "Bankruptcy"), as amended, or under any similar federal or state statute by or against any of the Obligors or the Guarantor; (d) the appointment of a receiver or custodian for, or the making of a general assignment for the benefit of creditors by, any of the Obligors or the Guarantor; or (e) the dissolution of any of the Obligors

Upon the occurrence and during the continuance of an Event of Default under this Guaranty, the Bank may, at its option, declare the Indebtedness to be immediately due and payable by the Guarantor, and the Guarantor shall on demand pay the same to the Bank in immediately available funds, in lawful money of the United States of America

7    Security Interests and Setoff   As security for the Guarantor's obligations hereunder, the Guarantor agrees that (a) in the event the Guarantor fails to pay its obligations hereunder when due and payable under the Guaranty, any of the Guarantor's assets of any kind, nature, or description (including, without limitation, deposit accounts) in the possession, control, or custody of the Bank, may, without notice to the Guarantor, be reduced to cash or the like and applied by the Bank in reduction or payment of the Guarantor's obligations hereunder; (b) all security interests, liens, and encumbrances heretofore, now and at any time or times hereafter granted by the Guarantor to the Bank also shall secure the Guarantor's obligations hereunder; and (c) the Bank shall have the right, immediately and without further action by it, to set off against the Indebtedness all money owed by the Bank in any capacity to the Guarantor, whether or not due, and the Bank shall be deemed to have made a charge against any such money immediately upon the occurrence of such obligation becoming due even though such charge is made or entered on the books of the Bank subsequent thereto

8.    Cumulative Rights   All rights of the Bank hereunder or otherwise arising under the Settlement Agreement are separate and cumulative and may be pursued separately, successively, or concurrently, or not pursued, without affecting or limiting any other right of the Bank and without affecting or impairing the liability of the Guarantor

9    Assignment   The Bank may, without notice to, or consent of, the Guarantor, sell, assign, or transfer to any person or persons all or any part of the Indebtedness, and each such person or persons shall have the right to enforce this Guaranty as fully as the Bank, provided that the Bank shall continue to have the unimpaired right prior and superior to that of any such assignee, transferee, or holder to enforce this Guaranty as to so much of the Indebtedness that it has not sold, assigned, or transferred

10    Successors and Assigns.   This Guaranty shall bind the Guarantor and his heirs, executors, administrators, legal representatives, successors, and assigns and shall inure to the benefit of, and be enforceable by, the Bank and its successors and assigns, including, without limitation, each and every person who shall from time to time be or become the holder of the Settlement Agreement or any document entered into pursuant thereto

11.    Notices   Notices under this Guaranty shall be given in accordance with the provisions of the Settlement Agreement

12    Amendment   This Guaranty may be terminated, amended, supplemented, waived, released or modified only by an instrument in writing signed by the party against whom the

enforcement of the termination, amendment, supplementation, waiver, release, or modification is sought

13      Usury   Notwithstanding any other provisions herein contained, no provision of this Guaranty shall require or permit the collection from the Guarantor of interest in excess of the maximum rate or amount that the Guarantor may be required or permitted to pay pursuant to any Applicable Law

14      Governing Law   This Guaranty shall be deemed to be a contract made under, and for all purposes shall be construed in accordance with, the laws of the State of Georgia

15      Time   Time is of the essence of this Guaranty.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty under seal as of the day and year first above written

GUARANTOR:

_____[SEAL]
JAMES L. FRITZE

-5-

## GUARANTY

THIS GUARANTY ("Guaranty") is given as of May 14, 2012, to REGIONS BANK (the "Bank") by JIMMIE E HORN, JR (the "Guarantor") for the obligations of PROFESSIONAL SYSTEMS, LLC, a Georgia limited liability company ("Professional") and PROFESSIONAL CLEANING CONTROLS, LLC, a Georgia limited liability company ("PCC"; together with Professional, the "Obligors")

### RECITALS

WHEREAS, on May 14, 2012, Bank, Obligors, and Guarantor entered into that certain Release and Settlement Agreement (the "Settlement Agreement"), pursuant to which, Obligors and Guarantor have agreed to pay the principal amount of $1,022,986 93, together with interest at the rate of 2% on the unpaid principal amount outstanding from the effective date of the Settlement Agreement until fully paid to Bank; and

WHEREAS, on May 14, 2012, Bank, Obligors, and Guarantor also entered into that certain Consent Judgment, which is attached as Exhibit 2 to the Settlement Agreement (the "Consent Judgment"), and upon the occurrence of an Event of Default under, and as defined in, the Settlement Agreement, Bank shall have the immediate right to present the Consent Judgment to the United States District Court for the Middle District of Georgia, Macon Division for entry; and

WHEREAS, Guarantor has a direct or indirect ownership interest in Obligors and will receive a direct or indirect benefit from the Settlement Agreement, and therefore has agreed to guarantee to the Bank the obligations of the Obligors as set forth herein; and

WHEREAS, but for this Guaranty, the Bank would be unwilling to enter into the Settlement Agreement

NOW, THEREFORE, in consideration of the Bank's financial accommodations to Obligors, the Guarantor hereby covenants and agrees with the Bank as follows:

1    Guaranty of Payment   The Guarantor hereby unconditionally and irrevocably guaranties to the Bank the full payment and performance, when due, by acceleration or otherwise, of all indebtedness, liabilities, and obligations of Obligors to the Bank of any kind and description under and pursuant to the Settlement Agreement or any document entered into pursuant thereto, including but not limited to, the Consent Judgment (collectively, the "Indebtedness") The guaranty of the Guarantor as set forth in this section is an absolute, continuing, primary, and unconditional guaranty of payment and not of collection

If a claim is ever made upon the Bank for the repayment or recovery of any amount or amounts received by the Bank in payment of any of the Indebtedness and the Bank repays all or part of such amount by reason of (a) any judgment, decree, or order of any court or administrative body having jurisdiction over the Bank or any of its property, or (b) any settlement or compromise of any such claim effected by the Bank with any such claimant, including the Obligors, then in such event the Guarantor agrees that any such judgment, decree,

order, settlement, or compromise shall be binding upon the Guarantor, notwithstanding any revocation hereof or the cancellation of the Settlement Agreement or other instrument evidencing any of the Indebtedness, and the Guarantor shall be and remain obligated to the Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Bank, such amount to be included in the term "Indebtedness "

This Guaranty may be enforced by the Bank against the Guarantor without the necessity at any time of the Bank's (a) having recourse against Obligors on the Settlement Agreement, or (b) exercising any other rights available to it under the Settlement Agreement  The Guarantor on demand shall pay to the Bank in immediately available funds, in lawful money of the United States of America, any sum or sums due to the Bank hereunder

2    Nature of Obligations  The Guarantor acknowledges and agrees that no change in the nature or terms of the Indebtedness or the Settlement Agreement, whether by operation of law or otherwise, including, without limitation any impairment, modification, change, release, or limitation of the liability of Obligors by reason of any Obligors' bankruptcy or insolvency or any subsequent reorganization, merger, or consolidation of Obligors or any other change in their composition, nature, personnel, or location shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty  It is the purpose and intent of the Guarantor and the Bank that the covenants, agreements, and all liabilities and obligations of the Guarantor hereunder are absolute, unconditional, and irrevocable under any and all circumstances, including, without limitation, the invalidity or unenforceability of the Settlement Agreement  Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty are fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this paragraph of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, omission of the Bank, or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by the Bank, whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of, the Guarantor, including, without limitation, the failure of the Bank to perfect, or to continue the perfection of, any lien or security interest in any security or any delay by the Bank in perfecting any such lien or security interest, or by reason of any further dealings between the Obligors and the Bank, or any other guarantor or surety, and the Guarantor hereby expressly waives and surrenders any defense to its liability hereunder based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements, or waivers  Without limiting the generality of the foregoing, the Guarantor hereby gives its consent for the Bank to do any one or more of the following without in any manner affecting, impairing, limiting, modifying, or releasing any of the obligations of the Guarantor under this Agreement and without notice to or consent of the Guarantor: (a) exchange, compromise, or surrender the whole or any part of the security now or hereafter held for the Indebtedness; (b) exchange, extend, or renew the time or place of payment of the Indebtedness in whole or in part, to a time certain or otherwise whether or not longer than the original period, or withdraw credit or time to pay; (c) extend or change the terms of performance of any other obligations of Obligors under the Settlement Agreement; (d) modify, amend, or waive any of the provisions of the Settlement Agreement; (e) release or grant indulgences to Obligors; (f) receive property or other security as collateral for the Indebtedness; (g) fail to exercise due diligence or omit to enforce any right,

6865133 v01

-2-

power, or privilege under the Settlement Agreement; and (h) apply any payment received by the Bank from Obligors of, or on account of, the Indebtedness, in any manner the Bank elects

3       Waiver of Rights.  The Guarantor expressly waives: (a) notice of the execution and delivery of the Settlement Agreement and creation of the Indebtedness; (b) notice of acceptance of this Guaranty by the Bank and of all financial accommodations to Obligors by the Bank; (c) presentment and demand for payment of any of the Indebtedness; (d) protest and notice of dishonor or of default or nonpayment to the Guarantor or to any other party with respect to the Indebtedness or with respect to any security therefor; (e) notice of the Bank's obtaining, amending, substituting for, releasing, waiving, or modifying any security interest, liens, or encumbrances now or hereafter securing the Indebtedness, or the Bank's subordinating, compromising, discharging, or releasing such security interests, liens, or encumbrances and any other notices whatever; (f) demand for payment under this Guaranty; (g) the provisions of Section 10-7-24 of the Official Code of Georgia Annotated; and (h) all rights of subrogation, indemnification, contribution, and reimbursement from Obligors, all rights to enforce any remedy the Bank may have against Obligors, and any benefit of, or right to participate in, any collateral or security now or hereinafter held by the Bank in respect of the Indebtedness, even upon payment in full of the Indebtedness

4.      Term of Guaranty: Warranties.  This Guaranty shall continue in full force and effect until the Indebtedness is fully paid, performed, and discharged  The Guarantor warrants and represents to the Bank that (a) the Guarantor will directly benefit from the financial accommodations being extended to the Obligors by the Bank; (b) this Guaranty is binding upon and enforceable against the Guarantor, in accordance with its terms; (c) the execution and delivery of this Guaranty do not violate or constitute a breach of any agreement to which the Guarantor is a party or of any applicable laws; and (d) there is no litigation, claim, action, or proceeding pending, or, to the best knowledge of the Guarantor, threatened against the Guarantor that would materially adversely affect the financial condition of the Guarantor or its ability to fulfill its obligations hereunder

5       Attorneys' Fees and Costs of Collection  If at any time or times hereafter the Bank employs counsel to pursue collection, to intervene, to sue for enforcement of, or take any other action with respect to the terms hereof or of the Settlement Agreement, then in such event, all of the reasonable attorneys' fees and disbursements relating thereto and any other fees and disbursements incurred by or on behalf of the Bank, due to the failure of Obligors to pay the Indebtedness when due and payable, shall be an additional liability of the Guarantor to the Bank, payable on demand

6       Events of Default.  The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") under this Guaranty: (a) the failure of the Guarantor to perform, observe, or comply with any of the provisions of this Guaranty, including, without limitation, the payment provisions; (b) the failure of Obligors to, after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement, make any payment due under the Settlement Agreement or any other default or event of default occurs under the Settlement Agreement after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement; (c) the filing of any petition for relief under any provision of

Title 11 of the United States Code (entitled "Bankruptcy"), as amended, or under any similar federal or state statute by or against any of the Obligors or the Guarantor; (d) the appointment of a receiver or custodian for, or the making of a general assignment for the benefit of creditors by, any of the Obligors or the Guarantor; or (e) the dissolution of any of the Obligors

Upon the occurrence and during the continuance of an Event of Default under this Guaranty, the Bank may, at its option, declare the Indebtedness to be immediately due and payable by the Guarantor, and the Guarantor shall on demand pay the same to the Bank in immediately available funds, in lawful money of the United States of America

7    Security Interests and Setoff   As security for the Guarantor's obligations hereunder, the Guarantor agrees that (a) in the event the Guarantor fails to pay its obligations hereunder when due and payable under the Guaranty, any of the Guarantor's assets of any kind, nature, or description (including, without limitation, deposit accounts) in the possession, control, or custody of the Bank, may, without notice to the Guarantor, be reduced to cash or the like and applied by the Bank in reduction or payment of the Guarantor's obligations hereunder; (b) all security interests, liens, and encumbrances heretofore, now and at any time or times hereafter granted by the Guarantor to the Bank also shall secure the Guarantor's obligations hereunder; and (c) the Bank shall have the right, immediately and without further action by it, to set off against the Indebtedness all money owed by the Bank in any capacity to the Guarantor, whether or not due, and the Bank shall be deemed to have made a charge against any such money immediately upon the occurrence of such obligation becoming due even though such charge is made or entered on the books of the Bank subsequent thereto

8    Cumulative Rights   All rights of the Bank hereunder or otherwise arising under the Settlement Agreement are separate and cumulative and may be pursued separately, successively, or concurrently, or not pursued, without affecting or limiting any other right of the Bank and without affecting or impairing the liability of the Guarantor

9    Assignment   The Bank may, without notice to, or consent of, the Guarantor, sell, assign, or transfer to any person or persons all or any part of the Indebtedness, and each such person or persons shall have the right to enforce this Guaranty as fully as the Bank, provided that the Bank shall continue to have the unimpaired right prior and superior to that of any such assignee, transferee, or holder to enforce this Guaranty as to so much of the Indebtedness that it has not sold, assigned, or transferred

10    Successors and Assigns   This Guaranty shall bind the Guarantor and his heirs, executors, administrators, legal representatives, successors, and assigns and shall inure to the benefit of, and be enforceable by, the Bank and its successors and assigns, including, without limitation, each and every person who shall from time to time be or become the holder of the Settlement Agreement or any document entered into pursuant thereto

11    Notices   Notices under this Guaranty shall be given in accordance with the provisions of the Settlement Agreement

12    Amendment   This Guaranty may be terminated, amended, supplemented, waived, released or modified only by an instrument in writing signed by the party against whom the

enforcement of the termination, amendment, supplementation, waiver, release, or modification is sought

14     Usury   Notwithstanding any other provisions herein contained, no provision of this Guaranty shall require or permit the collection from the Guarantor of interest in excess of the maximum rate or amount that the Guarantor may be required or permitted to pay pursuant to any Applicable Law

14     Governing Law   This Guaranty shall be deemed to be a contract made under, and for all purposes shall be construed in accordance with, the laws of the State of Georgia.

15     Time   Time is of the essence of this Guaranty

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty under seal as of the day and year first above written

GUARANTOR:

_____[SEAL]
JIMMIE L. HORN, JR.

-5-

# GUARANTY

THIS GUARANTY ("Guaranty") is given as of *May 14* 2012, to REGIONS BANK (the "Bank") by MARK W. HORN (the "Guarantor") for the obligations of PROFESSIONAL SYSTEMS, LLC, a Georgia limited liability company ("Professional") and PROFESSIONAL CLEANING CONTROLS, LLC, a Georgia limited liability company ("PCC"; together with Professional, the "Obligors")

## RECITALS

WHEREAS, on *May 14*, 2012, Bank, Obligors, and Guarantor entered into that certain Release and Settlement Agreement (the "Settlement Agreement"), pursuant to which, Obligors and Guarantor have agreed to pay the principal amount of $1,022,986 93, together with interest at the rate of 2% on the unpaid principal amount outstanding from the effective date of the Settlement Agreement until fully paid to Bank; and

WHEREAS, on *May 14*, 2012, Bank, Obligors, and Guarantor also entered into that certain Consent Judgment, which is attached as Exhibit 2 to the Settlement Agreement (the "Consent Judgment"), and upon the occurrence of an Event of Default under, and as defined in, the Settlement Agreement, Bank shall have the immediate right to present the Consent Judgment to the United States District Court for the Middle District of Georgia, Macon Division for entry; and

WHEREAS, Guarantor has a direct or indirect ownership interest in Obligors and will receive a direct or indirect benefit from the Settlement Agreement, and therefore has agreed to guarantee to the Bank the obligations of the Obligors as set forth herein; and

WHEREAS, but for this Guaranty, the Bank would be unwilling to enter into the Settlement Agreement

NOW, THEREFORE, in consideration of the Bank's financial accommodations to Obligors, the Guarantor hereby covenants and agrees with the Bank as follows:

1    Guaranty of Payment   The Guarantor hereby unconditionally and irrevocably guaranties to the Bank the full payment and performance, when due, by acceleration or otherwise, of all indebtedness, liabilities, and obligations of Obligors to the Bank of any kind and description under and pursuant to the Settlement Agreement or any document entered into pursuant thereto, including but not limited to, the Consent Judgment (collectively, the "Indebtedness") The guaranty of the Guarantor as set forth in this section is an absolute, continuing, primary, and unconditional guaranty of payment and not of collection

If a claim is ever made upon the Bank for the repayment or recovery of any amount or amounts received by the Bank in payment of any of the Indebtedness and the Bank repays all or part of such amount by reason of (a) any judgment, decree, or order of any court or administrative body having jurisdiction over the Bank or any of its property, or (b) any settlement or compromise of any such claim effected by the Bank with any such claimant, including the Obligors, then in such event the Guarantor agrees that any such judgment, decree,

order, settlement, or compromise shall be binding upon the Guarantor, notwithstanding any revocation hereof or the cancellation of the Settlement Agreement or other instrument evidencing any of the Indebtedness, and the Guarantor shall be and remain obligated to the Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Bank, such amount to be included in the term "Indebtedness "

This Guaranty may be enforced by the Bank against the Guarantor without the necessity at any time of the Bank's (a) having recourse against Obligors on the Settlement Agreement, or (b) exercising any other rights available to it under the Settlement Agreement. The Guarantor on demand shall pay to the Bank in immediately available funds, in lawful money of the United States of America, any sum or sums due to the Bank hereunder

2    Nature of Obligations   The Guarantor acknowledges and agrees that no change in the nature or terms of the Indebtedness or the Settlement Agreement, whether by operation of law or otherwise, including, without limitation any impairment, modification, change, release, or limitation of the liability of Obligors by reason of any Obligors' bankruptcy or insolvency or any subsequent reorganization, merger, or consolidation of Obligors or any other change in their composition, nature, personnel, or location shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty It is the purpose and intent of the Guarantor and the Bank that the covenants, agreements, and all liabilities and obligations of the Guarantor hereunder are absolute, unconditional, and irrevocable under any and all circumstances, including, without limitation, the invalidity or unenforceability of the Settlement Agreement Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty are fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this paragraph of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, omission of the Bank, or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by the Bank, whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of, the Guarantor, including, without limitation, the failure of the Bank to perfect, or to continue the perfection of, any lien or security interest in any security or any delay by the Bank in perfecting any such lien or security interest, or by reason of any further dealings between the Obligors and the Bank, or any other guarantor or surety, and the Guarantor hereby expressly waives and surrenders any defense to its liability hereunder based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements, or waivers Without limiting the generality of the foregoing, the Guarantor hereby gives its consent for the Bank to do any one or more of the following without in any manner affecting, impairing, limiting, modifying, or releasing any of the obligations of the Guarantor under this Agreement and without notice to or consent of the Guarantor: (a) exchange, compromise, or surrender the whole or any part of the security now or hereafter held for the Indebtedness; (b) exchange, extend, or renew the time or place of payment of the Indebtedness in whole or in part, to a time certain or otherwise whether or not longer than the original period, or withdraw credit or time to pay; (c) extend or change the terms of performance of any other obligations of Obligors under the Settlement Agreement; (d) modify, amend, or waive any of the provisions of the Settlement Agreement; (e) release or grant indulgences to Obligors; (f) receive property or other security as collateral for the Indebtedness; (g) fail to exercise due diligence or omit to enforce any right,

power, or privilege under the Settlement Agreement; and (h) apply any payment received by the Bank from Obligors of, or on account of, the Indebtedness, in any manner the Bank elects

3    Waiver of Rights  The Guarantor expressly waives: (a) notice of the execution and delivery of the Settlement Agreement and creation of the Indebtedness; (b) notice of acceptance of this Guaranty by the Bank and of all financial accommodations to Obligors by the Bank; (c) presentment and demand for payment of any of the Indebtedness; (d) protest and notice of dishonor or of default or nonpayment to the Guarantor or to any other party with respect to the Indebtedness or with respect to any security therefor; (e) notice of the Bank's obtaining, amending, substituting for, releasing, waiving, or modifying any security interest, liens, or encumbrances now or hereafter securing the Indebtedness, or the Bank's subordinating, compromising, discharging, or releasing such security interests, liens, or encumbrances and any other notices whatever; (f) demand for payment under this Guaranty; (g) the provisions of Section 10-7-24 of the Official Code of Georgia Annotated; and (h) all rights of subrogation, indemnification, contribution, and reimbursement from Obligors, all rights to enforce any remedy the Bank may have against Obligors, and any benefit of, or right to participate in, any collateral or security now or hereinafter held by the Bank in respect of the Indebtedness, even upon payment in full of the Indebtedness

4    Term of Guaranty; Warranties  This Guaranty shall continue in full force and effect until the Indebtedness is fully paid, performed, and discharged  The Guarantor warrants and represents to the Bank that (a) the Guarantor will directly benefit from the financial accommodations being extended to the Obligors by the Bank; (b) this Guaranty is binding upon and enforceable against the Guarantor, in accordance with its terms; (c) the execution and delivery of this Guaranty do not violate or constitute a breach of any agreement to which the Guarantor is a party or of any applicable laws; and (d) there is no litigation, claim, action, or proceeding pending, or, to the best knowledge of the Guarantor, threatened against the Guarantor that would materially adversely affect the financial condition of the Guarantor or its ability to fulfill its obligations hereunder

5    Attorneys' Fees and Costs of Collection  If at any time or times hereafter the Bank employs counsel to pursue collection, to intervene, to sue for enforcement of, or take any other action with respect to the terms hereof or of the Settlement Agreement, then in such event, all of the reasonable attorneys' fees and disbursements relating thereto and any other fees and disbursements incurred by or on behalf of the Bank, due to the failure of Obligors to pay the Indebtedness when due and payable, shall be an additional liability of the Guarantor to the Bank, payable on demand

6    Events of Default  The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") under this Guaranty: (a) the failure of the Guarantor to perform, observe, or comply with any of the provisions of this Guaranty, including, without limitation, the payment provisions; (b) the failure of Obligors to, after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement, make any payment due under the Settlement Agreement or any other default or event of default occurs under the Settlement Agreement after notice and an opportunity to cure as provided in Section 6(b) of the Settlement Agreement; (c) the filing of any petition for relief under any provision of

-3-

Title 11 of the United States Code (entitled "Bankruptcy"), as amended, or under any similar federal or state statute by or against any of the Obligors or the Guarantor; (d) the appointment of a receiver or custodian for, or the making of a general assignment for the benefit of creditors by, any of the Obligors or the Guarantor; or (e) the dissolution of any of the Obligors

Upon the occurrence and during the continuance of an Event of Default under this Guaranty, the Bank may, at its option, declare the Indebtedness to be immediately due and payable by the Guarantor, and the Guarantor shall on demand pay the same to the Bank in immediately available funds, in lawful money of the United States of America

7    Security Interests and Setoff   As security for the Guarantor's obligations hereunder, the Guarantor agrees that (a) in the event the Guarantor fails to pay its obligations hereunder when due and payable under the Guaranty, any of the Guarantor's assets of any kind, nature, or description (including, without limitation, deposit accounts) in the possession, control, or custody of the Bank, may, without notice to the Guarantor, be reduced to cash or the like and applied by the Bank in reduction or payment of the Guarantor's obligations hereunder; (b) all security interests, liens, and encumbrances heretofore, now and at any time or times hereafter granted by the Guarantor to the Bank also shall secure the Guarantor's obligations hereunder; and (c) the Bank shall have the right, immediately and without further action by it, to set off against the Indebtedness all money owed by the Bank in any capacity to the Guarantor, whether or not due, and the Bank shall be deemed to have made a charge against any such money immediately upon the occurrence of such obligation becoming due even though such charge is made or entered on the books of the Bank subsequent thereto.

8    Cumulative Rights. All rights of the Bank hereunder or otherwise arising under the Settlement Agreement are separate and cumulative and may be pursued separately, successively, or concurrently, or not pursued, without affecting or limiting any other right of the Bank and without affecting or impairing the liability of the Guarantor

9    Assignment   The Bank may, without notice to, or consent of, the Guarantor, sell, assign, or transfer to any person or persons all or any part of the Indebtedness, and each such person or persons shall have the right to enforce this Guaranty as fully as the Bank, provided that the Bank shall continue to have the unimpaired right prior and superior to that of any such assignee, transferee, or holder to enforce this Guaranty as to so much of the Indebtedness that it has not sold, assigned, or transferred

10    Successors and Assigns   This Guaranty shall bind the Guarantor and his heirs, executors, administrators, legal representatives, successors, and assigns and shall inure to the benefit of, and be enforceable by, the Bank and its successors and assigns, including, without limitation, each and every person who shall from time to time be or become the holder of the Settlement Agreement or any document entered into pursuant thereto

11    Notices   Notices under this Guaranty shall be given in accordance with the provisions of the Settlement Agreement.

12    Amendment   This Guaranty may be terminated, amended, supplemented, waived, released or modified only by an instrument in writing signed by the party against whom the

enforcement of the termination, amendment, supplementation, waiver, release, or modification is sought

  13 <u>Usury</u> Notwithstanding any other provisions herein contained, no provision of this Guaranty shall require or permit the collection from the Guarantor of interest in excess of the maximum rate or amount that the Guarantor may be required or permitted to pay pursuant to any Applicable Law

  14 <u>Governing Law</u> This Guaranty shall be deemed to be a contract made under, and for all purposes shall be construed in accordance with, the laws of the State of Georgia

  15 <u>Time</u> Time is of the essence of this Guaranty

  IN WITNESS WHEREOF, the Guarantor has executed this Guaranty under seal as of the day and year first above written

GUARANTOR:

_____[SEAL]

**MARK W. HORN**

-5-